IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

MICHAEL HAILMANN,                    )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )        Case No. 07-5070-CV-SW-ODS
                                     )
ALLSTATE INSURANCE COMPANY,          )
                                     )
                    Defendant.       )

ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

        Pending before the Court is Plaintiff's Motion for Partial Summary Judgment
(Doc. # 24) and Defendant's Motion for Summary Judgment (Doc. # 28).  For the
following reasons, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.


I. BACKGROUND


        The above-captioned matter is a declaratory judgment action involving insurance
coverage.  The underlying action, captioned A. Kaye Grossman and Peter Vandal v.
Michael J. Hailmann, civil action no. 07SN-CC00039, is pending in the Circuit Court of
Stone County, Missouri.  The underlying complaint alleges that Michael J. Hailmann, the
Plaintiff in this declaratory judgment action, negligently caused damage to Grossman
and Vandal in an auto collision arising out of Plaintiff's operation of a vehicle.  The
vehicle Plaintiff was driving at the time of the accident was covered by an Allstate
insurance policy ("the Policy") issued by Defendant to the named insured, George
Chapman.
        Plaintiff's Petition for Declaratory Judgment asks the Court to declare that
Plaintiff is an insured under the Policy; to order Defendant to defend and indemnify
Plaintiff in the underlying lawsuit; and to declare all other rights and legal relations of

Plaintiff and Defendant arising out of the Policy.  Plaintiff's Motion for Partial Summary Judgment asks the Court to rule that Defendant has a duty to defend Plaintiff.[1] Defendant's Motion for Summary Judgment asks the Court to rule that Plaintiff is not an insured person under the Policy, and therefore that Defendant has no duty to defend or indemnify Plaintiff.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

---

[1] Plaintiff also asks the Court to rule that, in the event that Plaintiff is found to be an insured under the Policy, that the Policy is primary over other insurance covering the Plaintiff.  Additionally, Plaintiff seeks attorneys' fees incurred in this action and in the underlying action.

2

## III. DISCUSSION

"Under Missouri law, an insurer's duty to defend is broader than its duty to indemnify. The standard for determining whether an insurer owes a duty to defend is based on a comparison of the language of the policy with the allegations of the plaintiff's complaint, and where those allegations state a claim which is *potentially* or *arguably* within the policy's coverage, then the insurer must defend the suit." Missouri Terrazzo Co. v. Iowa Nat. Mut. Ins. Co., 740 F.2d 647 (8th Cir. 1984). Plaintiff argues that the underlying petition alleges sufficient facts that could potentially bring Plaintiff within the Policy's coverage, and that therefore, Defendant has a duty to defend Plaintiff in the underlying action.

The Policy at issue obligates Defendant to tender a defense to an "insured person." An "insured person" is defined in the omnibus clause of the Policy as:

> (1) While using an insured auto:
>     a) you,
>     b) any resident relative, and
>     c) any other licensed driver using it with your permission.

The Policy defines "You" or "Your" as "the policyholder named on the declarations page, and that policyholder's resident spouse." Both parties agree that the policyholder is George Chapman and that his spouse is Toni Ann Chapman. Both parties also agree that Plaintiff was not a resident relative. However, Plaintiff argues that the fact that Plaintiff was driving the insured vehicle at the time of the accident means that it is at least arguable that he was using it with the permission of George Chapman. Therefore, Plaintiff states Defendant must defend him in the underlying suit.

Defendant contends, however, that an insurer's duty to defend is also determined by "[a]ctual facts known to it or which could be known from reasonable investigation . . . If additional facts are ascertained, which show that the action is not within the coverage of the policy, the insurer is not obligated to afford a defense." Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 210 (Mo. Ct. App. 1995). Defendant states that the undisputed material facts show that Plaintiff did not have valid permission to use the vehicle.

3

The parties agree that neither George Chapman, the policyholder, or Toni Ann Chapman, his spouse, gave express permission to Plaintiff to use the vehicle. However, there is a dispute about whether Tony Chapman, George and Toni's son, gave Plaintiff permission to drive the vehicle. The issue, then, is whether Tony Chapman was even capable of giving Plaintiff valid permission to use the vehicle so as to make Plaintiff an insured person under the Policy.

Missouri law holds that a "second permittee" can qualify as an insured person if the policyholder (or his spouse) gives the first permittee such "broad and unfettered use or dominion over the car" that the policyholder has, in effect, given implied permission to the second permittee. See U.S. Fidelity & Guaranty Co. v. Safeco Ins. Co. of America, 522 S.W.2d 809, 814 (Mo. 1975). In other words, by granting such broad use of the vehicle to the first person, the policyholder is impliedly authorizing that person to give others permission to use the vehicle. Id. at 814-15.

For example, in U.S. Fidelity & Guaranty Co., Roy Chapman, a 17-year-old boy, was driving a vehicle that was involved in an accident. The vehicle was owned by Dorothy Kloepper, the named insured on the vehicle. Dorothy's daughter, Jane, was riding in the rear of the vehicle when the accident occurred and had allowed Roy to drive. The court stated that "every case requires a factual determination of whether the grant of permission by the named insured to the first permittee impliedly authorizes the first permittee to allow another to operate or use the automobile, thus making the second permittee an additional insured within the terms of the policy." Id. at 812. Thus, the court analyzed whether the express permission given by Dorothy to Jane was so broad as to impliedly allow Jane to give permission to Roy to drive the car. Id.

The court noted that Jane used the vehicle about 70% of the time; she had her own set of keys to the vehicle; she used the vehicle to run errands, for social outings, and referred to it as her car. The court placed importance on the fact that Ms. Kloepper had never denied Jane permission to use the car. Furthermore, in the nearly two years that Jane had been driving the car, Ms. Kloepper had only once told her not to let others drive it and that was when Jane first starting driving. Id. at 814. The court held that there was sufficient evidence to reach the conclusion that there was the requisite

4

implied permission by Ms. Kloepper to allow Jane to let others drive the car. Accordingly, Roy Chapman was found to be an insured person under the policy. Id.

The court contrasted the facts of the case with those in St. Paul Ins. Co. v. Carlyle, 428 S.W.2d 753 (Mo. Ct. App. 1968). In that case, the court held that the policyholder had not given his son broad permission to use the car sufficient to extend that permission to his son's friend. The court noted that Richard, the son, always asked his father when he wished to use the car, though he was never refused permission if the car was not otherwise in use. Additionally, his father had not provided Richard with his own set of keys to the car, though Richard had made a set of his own. The court found that Richard's use of the car was "by express permission, requested and renewed in each instance, subject perhaps to an uncertain right of use without expressly asking, which Richard believed would have been approved and ratified." Id. at 756. The court held that "such right of use does not . . . amount to free and unfettered dominion over the car." Id. Thus, Richard's friend was not an insured person.

In State Farm Mut. Auto. Ins. Co. v. Foley, the court considered whether Randy Blew, the driver of a vehicle involved in a collision, was driving with the permission of the named insured, Bobby Buck. 624 S.W.2d 853 (Mo. Ct. App. 1981). Mike Buck, Bobby's son, had allowed Randy to drive the car. The court noted that Mike Buck had paid for the vehicle and also paid the insurance premiums, however, Bobby held the title to the car, and the policy insuring the vehicle was issued to him. Mike used the vehicle approximately 90% of the time and paid its maintenance and gas. However, Bobby had explicitly told his son not to let anyone else drive the vehicle. Id. at 854. The court held that "the initial and subsequent conduct of Mr. Buck and Mike was such that even though Mike had almost sole use of the car, that use was limited by the restrictions and by the conduct of Mr. Buck." Id. at 856. As a result, Randy Blew was not covered by the policy.

In this case, the material facts are not in dispute. The insured vehicle was purchased by George Chapman and Toni Ann Chapman and it was titled in both of their names. George and Toni Ann paid the insurance premiums on the vehicle. George, Toni Ann, and Tony paid for gas and maintenance of the car. The Chapman family

5

considered the insured vehicle to be Toni Ann Chapman's; it was the only vehicle Toni Ann had to use.  Prior to the date of the accident, Toni was living between the residences of her daughters; the insured vehicle was always garaged at the location where she was staying.  Tony Chapman was also living at the residence of one sister or the other, but for the majority of the time he was not at the same residence as his mother.  There was only one set of keys for the vehicle, which was kept on the counter or in Toni Ann's purse.  Tony did not have his own set of keys to the vehicle.  When Tony was with his friends he described the car and the keys as his own.

Tony always asked his mother for permission if he wanted to use the car.  He used it approximately three or four times a week, which was about 50% of the time.  He used the car to do such things as to go to the movies, go play basketball, and to visit his girlfriend.  Toni Ann used the car for transportation to work.  Toni Ann would deny her son permission to use the car when she needed to use it.  She also had denied him permission to use the car once as punishment.  Toni Ann never told Tony that he was allowed to let others drive the vehicle.  Rather, Toni Ann expressly told Tony that he was not to let others use the vehicle.  She described this as a "golden rule" in the house.  Tony knew he was disobeying his parents if he allowed anyone else to drive the vehicle.  However, Tony did sometimes allow his friends to drive the car, though Tony had never asked his mother if he could let others drive the car, and he never informed her that he did let others drive it.  Neither George or Toni Ann ever told anyone else that Tony had permission to allow others to drive the car.

The uncontroverted material facts in this case lead to only one possible conclusion: Tony Chapman did not have broad and unfettered permission to use the car.  The facts require a conclusion quite to the contrary; Tony asked his mother for permission each time he wanted to use it.  Most importantly, he was explicitly told he was not to let others drive it.  This restriction on his use was made clear to him, and Tony knew he was disobeying his parents each time he allowed his friends to drive the car.  The fact that Tony referred to the car and keys as his own when he was with his friends is irrelevant; Tony could not create his own authority to grant others permission to use the car.  Likewise, the fact that Tony had allowed his friends to drive the car on

6

several occasions prior to the incident in question is irrelevant.  George and Toni Ann did not know Tony was letting others use the car, so they did not acquiesce in or ratify Tony's conduct.  Tony could not give valid permission to Plaintiff to drive the vehicle, so Plaintiff was not an insured person under the Policy at the time of the accident. Therefore, Defendant does not have a duty to defend or indemnify Plaintiff in the underlying action.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is DENIED.  Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: April 21, 2008                          UNITED STATES DISTRICT COURT